UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM POMEROY,

    Petitioner,

v.

TONY TRIERWEILER,

    Respondent.

Case No. 15-13547
Honorable Laurie J. Michelson
Magistrate Judge Patricia T. Morris

**OPINION AND ORDER DENYING
PETITION FOR A WRIT OF HABEAS CORPUS [1]**

William Pomeroy surreptitiously filmed his girlfriend's teenage daughter. He was convicted of child sexually abusive activity, among other crimes, and he received a custodial sentence. The Michigan Court of Appeals affirmed his conviction and sentence. Then Pomeroy petitioned this Court for a writ of habeas corpus, believing he is unconstitutionally confined. Pomeroy's habeas corpus claims do not merit relief.

**I.**

The Michigan Court of Appeals provided a detailed factual narrative of the events giving rise to Pomeroy's conviction. *See People v. Pomeroy*, No. 314219, 2014 WL 2040046, at *1–8 (Mich. Ct. App. May 15, 2014). What follows is a recitation of the facts relevant to Pomeroy's petition.

Back in 2011, Pomeroy lived with his girlfriend and her two daughters. At some point, Pomeroy misplaced an SD (or memory) card. He asked his girlfriend to help him find it, and she eventually did. On the SD card, Pomeroy's girlfriend found a video of her daughter taking a shower. At the time, her daughters were 15 and 13.

Pomeroy's girlfriend called 911. A Michigan State Police trooper viewed the video and noticed that it was taken from a lower corner of the shower stall. And in that corner of the stall, the trooper noticed a hole. (ECF No. 5-7, PageID.369, 371.) The hole looked down into the basement, an area Pomeroy said he was renovating. The trooper went to the basement and noticed a six-foot step ladder perched below a hole in the ceiling big enough to put a camera. Through the hole in the ceiling, the trooper could see light coming from the bathroom.

Eventually Pomeroy was arrested. He was charged with child sexually abusive activity, M.C.L. § 750.145c(2); surveilling an unclothed person, M.C.L. § 750.539j(2)(a); possession of child sexually abusive material, M.C.L. § 750.145(c)(4); and capturing an image of an unclothed person, M.C.L. § 750.539j(2)(b). He elected to go to trial.

The jury heard about all of the above. And they heard from Pomeroy's girlfriend's younger daughter. She testified that about two weeks before the video was discovered, she saw, through the hole in the tub, what looked like a video camera. (ECF No. 5-8, PageID.702.) She only mentioned it once the video came to light because, prior, she thought, "what's the possibility of a video camera being in a hole?" (*Id.*)

The jury also heard other-acts evidence. Pomeroy had been married before. And his ex-wife had two daughters, ages nine and 12. All three testified at Pomeroy's trial. Pomeroy's former step-daughters told the jury that Pomeroy would frequently use the bathroom while they were showering. Pomeroy's ex-wife said Pomeroy tried to convince her that they needed to videotape her daughters using surveillance cameras placed in teddy bears. (ECF No. 5-8, PageID.588.) His ex-wife never went along. And she said Pomeroy frequently watched pornography, sometimes featuring very young girls. (ECF No. 5-8, PageID.587.)

The jury also learned Pomeroy renovated his ex-wife's basement. One of the renovations permitted access to the bathtub's overflow hole. (ECF No. 5, PageID.669–670.) And one of Pomeroy's former step-daughters told the jury that while she was bathing she once thought she saw someone looking at her through the overflow hole. (ECF No. 5, PageID.657.)

The jury saw pictures of the ex-wife's house. The home's renovations permitted someone to view the tub through the overflow hole. And inside the wall space by the tub, police found a low-voltage transformer capable of powering a video camera. (ECF No. 5, PageID.676–678.)

The jury also heard from Pomeroy. His testimony requires some context. Pomeroy was charged with child sexually abusive activity in violation of Mich. Comp. Laws § 750.145c(2). That statute requires the prosecutor prove, among other things, that Pomeroy made a video containing "erotic nudity." *See* Mich. Comp. Laws § 750.145c. Pomeroy tried to beat the charges two ways.

One way was to convince the jury that his girlfriend made the tape. He told the jury his girlfriend regularly filmed sex and had all the equipment to frame him. (ECF No. 5, PageID.830.) And he told them she had the motive. Around the time the video was discovered, his girlfriend's ex-husband was getting out of prison. (ECF No. 5, PageID.806–807.) The return of the ex-husband soured an already strained relationship between Pomeroy and his girlfriend. (*Id.*)

The other way was to suggest he had no need for an erotic video. He told the jury his relationship with his girlfriend was "very, very, very sexual." (ECF No. 5, PageID.804.) And so he never made any erotic videos of his girlfriend's daughters. (*Id.* at PageID.832–833.) And Pomeroy's closing doubled down. Pomeroy's lawyer told the jury that because the girlfriend's daughter was "a large female," nobody could think the video was for an erotic purpose. (ECF No. 5, PageID.953–954.)

Pomeroy was convicted. (ECF No. 5, PageID.1001.)

He appealed. But the Michigan Court of Appeals affirmed, *Pomeroy*, 2014 WL 2040046 at *16, and the Michigan Supreme Court denied leave to appeal. *People v. Pomeroy*, 854 N.W.2d 892 (2014). Then he petitioned this Court for a writ of habeas corpus.

## II.

The Antiterrorism and Effective Death Penalty Act (AEDPA) (and 28 U.S.C. § 2254 in particular) "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). If a claim was "adjudicated on the merits in State court proceedings," this Court cannot grant habeas corpus relief on the basis of that claim "unless the adjudication of the claim . . . resulted in a decision" (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). But if the state courts did not adjudicate a claim "on the merits," this "'AEDPA deference' does not apply and [this Court] will review the claim de novo." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

## III.

Pomeroy says two errors of Constitutional significance occurred during closing arguments. The prosecutor's closing linked Pomeroy to former Penn State football coach Jerry Sandusky. And his lawyer's closing disparaged the victim. Pomeroy says the prosecutor's closing rendered the entire trial fundamentally unfair. And his lawyer's comment violated the Sixth Amendment.

### A.

Pomeroy's first claim stems from a portion of the prosecutor's closing argument. At the outset, the Warden points out that Pomeroy did not lodge a contemporaneous objection. So the

Warden says Pomeroy procedurally defaulted his claim. However, addressing procedural default unnecessarily complicates this case, so the Court skips to the merits. *See Thomas v. Meko*, – F.3d –, No. 17-5824, 2019 U.S. App LEXIS 4458 (6th Cir. Feb. 14, 2019).

Pomeroy says a portion of the prosecutor's closing argument was so egregious it denied him a fair trial. Trying to rebut Pomeroy's innocent explanation of the video, the prosecutor told the jury the following:

> what we fully believe and we actually hope that you see from the evidence is that this video was made for a sexual purpose. What other reason could there be? Why else would you tape someone naked in the shower? The Jerry Sandusky defense, I'm trying to make sure the hygiene is proper? What other reason is there? We challenge you to think of another reason. There isn't.

(ECF No. 5-9, PageID.940.) Pomeroy says there was no reason to mention Jerry Sandusky. (ECF No. 1, PageID.32.) Mentioning Sandusky only served to link Pomeroy to a heinous, serial sexual predator and thus rendered Pomeroy's trial fundamentally unfair. (ECF No. 1, PageID.32–33.)

The Michigan Court of Appeals adjudicated this claim on the merits. The state court concluded the prosecutor was not trying to link Pomeroy to Sandusky. *Pomeroy*, 2014 U.S. App. LEXIS 684, at *16–17. Rather, the prosecutor was working to rebut any potential defense to filming a naked woman. *Id.* The state court also noted the reference was passing and the trial court eventually instructed the jury not to treat the lawyers' arguments as evidence. *Id.* at *17. So the prosecutor's comment did not deny Pomeroy a fair trial. *Id.*

On habeas corpus review, prosecutorial misconduct violates the Constitution only if a prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986), and citing *Darden* as the "clearly established Federal law" on this issue. *Id.*). *Darden* provides state courts "significant leeway to evaluate prosecutorial

5

misconduct claims on a case-by-case basis." *Halvorsen v. White*, 746 Fed. App'x 489, 497 (6th Cir. 2018) (citing *Parker*, 567 U.S. at 48). That leeway results in a "high standard" for defendants claiming prosecutorial misconduct violated their due process rights, and AEDPA raises the bar even higher. *Halvorsen*, 477 U.S. at 499.

The Michigan Court of Appeals' reasonably concluded the prosecutor was not trying to equate Pomeroy with Sandusky. Instead, the prosecutor, through one isolated statement, illustrated the implausibility of any non-erotic purpose for filming naked children in the shower. (*See* ECF No. 5, PageID.940.) And the jurors were instructed that attorneys' arguments were not evidence, and that they must base their decision only on the evidence. So the prosecutor's single reference to Jerry Sandusky did not "so infect[] the trial with unfairness" that Pomeroy's right to a fair trial was violated. *Parker*, 567 U.S. at 45. Pomeroy cannot clear § 2254(d).

**B.**

Next Pomeroy says his lawyer was unconstitutionally bad. In closing, Pomeroy's lawyer disparaged the victim. Recall that the criminal statute penalized production of videos depicting "sexual excitement" or "erotic nudity." Mich. Comp. Laws § 740.145c. So Pomeroy's lawyer told the jury the following:

> "Sexual excitement, or erotic nudity." I don't see any of those when I look at that film at all. With due respect to the young lady, we see a large female. When I picture erotic nudity, sexual intercourse, erotic fondling, I'm looking for a blond, blue-eyed lady with voluptuous breasts showing off various parts of her body, rubbing, caressing, to get you excited so you don't need Viagra. That doesn't happen in this particular case.

(ECF No. 5, PageID.953–954.) These remarks disturbed some of the jurors. (ECF No. 5, PageID.954.) And Pomeroy points to the jurors' reaction as evidence that his lawyer's comments caused prejudice.

6

The Michigan Court of Appeals adjudicated this claim on the merits. *Pomeroy*, 2014 U.S. App. LEXIS 684, at *18–20. The state court reasoned that, as he tried to explain during the closing, Pomeroy's lawyers' comments were strategic. *Id.* Counsel wanted to convince the jury that the video did not fall within the conduct proscribed by the statute. *Id.* at *19. And to do so, he had to discuss the video's contents. *Id.* So Pomeroy could not establish ineffective assistance. *Id.*

At this stage, the Court's review of Pomeroy's lawyer's performance is "doubly deferential." *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013)). The first layer is the familiar deficient performance plus prejudice standard from *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). The second layer asks only "whether the state court was reasonable in its determination that counsel's performance was adequate." *Abby*, 742 F.3d at 226 (citing *Burt*, 571 U.S. at 15). To prevail, a petitioner "must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699.

The Michigan Court of Appeals did not apply *Strickland* in an objectively unreasonable manner. To be sure, Pomeroy's lawyer did not need to say anything about the victim's body to argue the video did not fall within the conduct punished by the statute. But he believed it could be an effective argument. And whether he was wrong or whether the argument turned off a juror, does not mean it was not a strategic decision or that he performed deficiently. But more importantly, the state court was not objectively unreasonable to find that the point of the lawyer's closing was to rebut the existence of "erotic nudity" or "sexual excitement." And to do so, the state court reasonably concluded that Pomeroy's lawyer had to address the video's contents. So Pomeroy cannot establish an unreasonable application of *Strickland*.

7

## IV.

Accordingly, Pomeroy's petition for a writ of habeas corpus is DENIED. And because the Court believes no reasonable jurist could disagree with the Court's resolution of Pomeroy's claims, a certificate of appealability will not issue. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). If Petitioner nonetheless chooses to appeal, he may proceed in forma pauperis. *See* 28 U.S.C. § 1915(a)(3).

IT IS SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Date: March 25, 2019

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, March 25, 2019, using the Electronic Court Filing system and/or first-class U.S. mail.

s/William Barkholz
Case Manager